**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

JESSE R.,

                             Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,        No. 3:20-CV-1220
                                          (CFH)

                             Defendant.

───────────────────────────────

**APPEARANCES:**                      **OF COUNSEL:**

Lachman, Gorton Law Firm         PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorneys for plaintiff

Social Security Administration       HUGH DUN RAPPAPORT, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

     Jesse R.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

───────────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

denying his applications for supplemental security income and disability insurance benefits.  See Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 13.  The Commissioner cross moves for judgment on the pleadings.  See Dkt. No. 18.  Plaintiff replies.  See Dkt. No. 21-1.  For the following reasons, plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion for judgment on the pleadings is denied, and the determination of the Commissioner is reversed and remanded for further proceedings.

## I. Background

On January 25, 2019, plaintiff filed a Title XVI application for supplemental security income benefits and Title II application for disability insurance benefits, and plaintiff's father filed an application for child's disability insurance benefits.  See T. at 192-202.[3]  Plaintiff alleged a disability onset date of August 1, 2003.[4]  See id. at 215. The Social Security Administration ("SSA") denied plaintiff's claim on March 15, 2019. See id. at 93, 98.  Plaintiff moved for reconsideration, see id. at 105, and his claims were again denied on May 24, 2019.  See id. at 106, 112, 118.  Plaintiff requested a hearing, see id. at 131, and a hearing was held on February 24, 2020, before Administrative Law Judge ("ALJ") Jeremy G. Eldred.  See id. at 30-44.  On March 5,

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 12.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

[4] The ALJ stated that "[i]n both applications, the claimant alleged disability beginning August 1, 2003."  T. at 10.  However, in each application, plaintiff alleged a disability onset date of July 9, 2003.  See id. at 192, 195, 202.  The SSA's disability report reflects a disability onset date of August 1, 2003.  See id. at 215.  Plaintiff does not challenge the ALJ's use of August 1, 2003, as plaintiff's alleged onset date.  See Dkt. No. 13.

2020, the ALJ issued an unfavorable decision.  See id. at 10-19.  On August 7, 2020, the Appeals Council denied plaintiff's request for review.  See id. at 1-5.  Plaintiff timely commenced this action on October 5, 2020.  See Compl.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed

even though the ultimate conclusion is arguably supported by substantial evidence.

See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817

F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding

is supported by substantial evidence, such finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v.

Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R.

§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since August 1, 2003, the alleged disability onset date. See T. at 12. At step two, the ALJ found that plaintiff had the following severe impairments: "anxiety disorder, depressive disorder, adjustment disorder with mixed emotional features, and borderline cognitive functioning[.]" Id. at 13. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels, except he can understand, remember, and carry out only simple and routine tasks; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors or co-workers; is unable to do a job that requires interaction with the public; and can appropriately deal with ordinary changes in an unskilled occupation that involves only simple and routine tasks[.]"

Id. at 15. At step four, the ALJ determined that plaintiff had no relevant past work. See id. at 17. At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. See id. Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from August 1, 2003, through the date of this decision[.]" Id. at 18.

**IV. Arguments**[5]

Plaintiff argues that the ALJ (1) erred in relying on the state agency medical

consultants' opinions; (2) cherry picked treatment notes from plaintiff's treating

psychologist, John Jody Dempsey, Ph.D.; and (3) erred in his RFC determination by

failing to include a work pace and attendance limitation or sufficiently reconcile his

social interactions limitation with the medical opinions. See Dkt. No. 13.  The

Commissioner argues that the ALJ appropriately reviewed the medical opinions under

the relevant regulations and the decision is supported by substantial evidence. See

Dkt. No. 18.


**V. Discussion**

**A. RFC Determination**

RFC is defined as "what an individual can still do despite his or her limitations.

. . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis[.]"  Pardee v.

Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d

45, 52 (2d Cir.1999) (additional citation omitted).  "In making a residual functional

capacity determination, the ALJ must consider a claimant's physical abilities, mental

abilities, [and] symptomology, including pain and other limitations which could interfere

with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R.

§ 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

"Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence . . . ." Dumas v. Comm'r of Soc. Sec., No. 7:13-CV-1099 (GTS/TWD), 2015 WL 1403342, at *13 (N.D.N.Y. Mar. 26, 2015). Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(a)-(c).[6] Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a) and (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. Id. § 404.1520c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

---

[6] 20 C.F.R. § 404.1520c contains the relevant regulations for Title II applications.  20 C.F.R. § 416.920c reflects identical rules for claimants filing under Title XVI.  Plaintiff filed an application under both Titles. See T. at 192-95.  Throughout this Memorandum-Decision and Order, the Court will reference the Title II regulations as that is what the parties cite in their briefs.  See Dkt. Nos. 13, 18.

persuasive the medical opinions or prior administrative medical finding(s) will be." Id.
§ 404.1520c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical
opinion(s) or prior administrative medical finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more persuasive the medical
opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2).[7] "If
the ALJ fails adequately to explain the supportability or consistency factors, or bases
her explanation upon a misreading of the record, remand is required." Rivera v.
Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at
*14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945
(S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions
of medical sources cited in his decision, [and] he [or she i]s entitled to weigh all of the
evidence available to make an RFC finding that [i]s consistent with the record as a
whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The
Court "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v.
Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  Therefore,
even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can
point to evidence in the record to support his or her position, "whether there is
substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the
Court] must decide whether substantial evidence supports the ALJ's decision." Bonet
ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis
omitted).  The ALJ must not "ignore evidence or cherry pick only the evidence from

---

[7] The ALJ is not required to discuss the remaining factors unless he or she finds that two or more medical
opinions are equally supported and consistent with the record.  See 20 C.F.R. § 404.1520c(b)(3).

medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).  "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision[.]'" Cichocki v. Astrue, 729 F.3d 172, 178, n.3 (2d Cir. 2013) (citing Mongeur, 722 F.2d at 1040).

## B. ALJ's Consistency Determination

The ALJ found that plaintiff's subjective allegations of intensity, persistence, and limiting effects of his symptoms were inconsistent with the record.  See T. at 16.  The ALJ recounted plaintiff's and his mother's testimony.  See id. at 15.  Plaintiff testified that he has difficulty reading, needs help with his mail, and although he can write, reading his handwriting is difficult.  See id. at 15, 35.  His mother explained that plaintiff can only do simple tasks, and he gets frustrated by difficult tasks and will walk away to cool off.  See id. at 15, 38-39.  Plaintiff and his mother testified that he does not have friends his own age, does not do anything out of the house on his own, does not speak to strangers, is anxious in public, and will sometimes refuse to leave his room.  See id. at 15, 36-37, 39.

The ALJ explained that the "evidence demonstrates that, despite his difficulties, [plaintiff] is generally able to engage in activities consistent with the ability to perform simple, unskilled work."  T. at 16.  The ALJ summarized the objective evidence, stating that plaintiff, "generally presents . . . alert and fully oriented . . .[, h]is memory has been deemed normal[,]" his "cognitive functioning [is] in the low average to borderline

range[,]" he "is very quiet, [but] he does not display overt difficulties with speech or language." Id.  The ALJ also noted that plaintiff complies with instructions, he can use a microwave to prepare food, he can use a video game console, and he helps care for the family dog.  See id.  The ALJ stated that plaintiff was not receiving "any mental health treatment at the present time.  He [] indicated that he no longer takes any medication. . . .  [H]is prior psychologist . . . retired, and he has not made arrangements to resume treatment with a new provider."  Id.

The ALJ also discussed Dr. Dempsey's treatment notes, stating that they "indicate that he encouraged [plaintiff] to make plans for the future and set goals for the future, such as getting a GED and a driver's license."  T. at 16.  The ALJ determined that "[t]hese notes suggest that [plaintiff] has the potential to move beyond the difficulties described by [plaintiff] and his mother during their hearing testimony."  Id. The ALJ stated that "[t]hese notes also indicate that [plaintiff] is in contact with a girlfriend and communicates with other people online.  It was also mentioned that [plaintiff] helped his cousin move . . ., and at one point was selling things over the internet."  Id.

### C.  Medical Opinion Evidence and the ALJ's Review

#### 1.  Psychiatric Evaluator Amanda Slowik, Psy. D.

Dr. Slowik conducted plaintiff's psychiatric evaluation.  See T. at 319-323. During the evaluation, Dr. Slowik noted that plaintiff was cooperative but "[h]is social skills were lacking"; he had minimal eye contact; his "[e]xpressive and receptive language skills were below-age expectations"; his thought process were coherent and goal oriented; he was oriented to person and "able to articulate that it was the end of

11

02/19, but was not able to be more specific about the date"; and his "[m]ood was reported to be anxious." Id. at 320.  Moreover, Dr. Slowik noted that "[e]ven if [plaintiff] had an average ability to express himself, it is likely that he would also continue to struggle with mutual exchanges.  The interview was quite difficult due to a lack of conversational skill."  Id.  Plaintiff's insight and judgment were poor.  See id. at 321. Plaintiff was able to count backward from ten and do simple additional and multiplication. See id.  He was able to remember three out of three objects immediately, and one out of three objects after a five-minute delay, but after being "given hints about the categories to which the two other objects belonged, [he] was able to produce both objects.  He could recite 5 digits forward and 2 digits backwards."  Id.  In reviewing plaintiff's "mode of living[,]" Dr. Slowik noted that plaintiff can "dress, bathe, and groom himself.  He uses a microwave to prepare food.  He can clean his room.  He does do laundry.  His parents do the grocery shopping and money management on his behalf, as he struggles in these areas."  Id.  Dr. Slowik also explained that plaintiff "does not drive and does not have access to a public bus."  Id.  Moreover, "[w]hen asked about his social life, the claimant indicated he has no friends by choice, but does have the support of family members.  Hobbies and interests include watching TV, listening to music, and playing video games."  Id.

In Dr. Slowik's medical source statement, she determined that plaintiff's "ability to understand and apply simple directions and instructions; and sustain concentration is moderately limited.  [His] ability to understand, remember, and apply complex directions and instructions is markedly limited."  T. at 321.  Dr. Slowik further opined that plaintiff's "ability to use reason and judgment to make work related decisions; interact adequately

with supervisors, coworkers, and the public; and regulate emotions is moderately to markedly limited." Id. at 321-22.  Additionally, Dr. Slowik determined that plaintiff's "ability to sustain an ordinary routine is mildly to moderately limited . . . [and his] ability to be aware of normal hazards is mildly limited." Id. at 322.  Dr. Slowik concluded that plaintiff was not limited in his ability to maintain personal hygiene. See id.  Finally, Dr. Slowik explained that plaintiff's conditions "may significantly interfere with [his] ability to function on a daily basis." Id.

The ALJ did not state the level of persuasiveness he afforded to Dr. Slowik's opinion but explained that because of the state agency medical consultants' opinions, "as well as the medical source statement from consultative examining psychologist Amanda Slowik, Psy.D. . . ., I find the claimant able to perform simple work that requires no more than occasional interaction with supervisors or co-workers, and no interaction with the public." T. at 16.  The ALJ concluded that Dr. Slowik's medical source statement was supported by her "mental status examination findings and other information in her report." Id. at 17.  The ALJ also found her opinion to be "consistent with other evidence in the record, including the information . . . from Dr. Dempsey's records regarding [plaintiff's] ability to interact with others." Id.  The ALJ explained that "[i]t should be noted that the areas of mental functioning in which Dr. Slowik indicated that the claimant might be markedly limited are accommodated by the residual functional capacity assessed in this decision, considering that it limits [plaintiff to] simple routine work that requires minimal interaction with others." Id.

### 2.  State Agency Medical Consultants

State Agency Medical Consultant J. Weitzen, Ph.D., conducted plaintiff's initial disability determination.  See T. at 45, 50.  Dr. Weitzen found that plaintiff was not significantly limited in his ability to remember locations and work-like procedures, sustain an ordinary routine, make simple work-related decisions, maintain socially appropriate behavior, and adhere to basic standards of neatness.  See id. at  51-52.  Dr. Weitzen determined that plaintiff was moderately limited in his ability to understand, remember, and carry out short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or in proximity to others without being distracted; complete a normal workday without interruptions; perform at a consistent pace; interact appropriately with the public; ask simple questions; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers and peers.  See id. at 51-52.  Finally, Dr. Weitzen found that plaintiff had marked limitations in understanding, remembering, and carrying out detailed instructions.  See id. at 51-52.

In the section labeled, "MRFC – Additional Explanation[,]" Dr. Weitzen stated that plaintiff's "IQ evaluation reveals scores low average to borderline[,]" and recounted Dr. Slowik's evaluation findings.  T. at 52-53.  Specifically, Dr. Weitzen stated that Dr. Slowik's evaluation "reveal[ed] fluent speech with below average expressive and receptive language skills, normal thought processes, restricted affect, anxious mood, moderately impaired attention and concentration, mildly to moderately impaired memory skills and poor insight and judgment."  Id. at 52.  Dr. Weitzen further summarized the evaluation in stating that plaintiff "does not socialize with others by choice and at times

14

is selectively mute.  Personal care is independent.  [Plaintiff] is able to make food in the microwave and does laundry.  Parents grocery shop and handle money management." Id. at 52-53.  As such, Dr. Weitzen determined that plaintiff "is able to meet the 4 basic mental demands of unskilled work activity in a low contact setting."  Id. at 53.

State Agency Medical Consultant E. Kamin, Ph.D., conducted plaintiff's disability determination on reconsideration.  See T. at 67, 76.  Dr. Kamin's determination is identical to Dr. Weitzen's initial determination.  Id. at 74-75.

The ALJ found Dr. Weitzen's and Dr. Kamin's opinions to be persuasive.  See T. at 16.  The ALJ explained that the opinions were "supported by a narrative rationale, which cites supporting mental status examination findings and other evidence from the record."  Id.  "Furthermore, the opinions . . . are consistent with the record as a whole, including the information [in the decision regarding] evaluation of the claimant's subjective complaints, and the mental status examination findings and other information in the report of the consultative psychiatric evaluation[.]"  Id.  Finally, the ALJ noted that the opinions "are also enhanced by the fact that they have expertise in the Social Security disability program rules."  Id.

### 3.  Plaintiff's Treating Psychologist J. Jody Dempsey, Ph.D.

Dr. Dempsey submitted "two psychological evaluations[,]" "in addition to copies of [a]n abundance of relevant treatment sessions with [plaintiff] over the years[,]" and "a copy of the [medical] questionnaire[.]"  T. at 343.  In his letter to plaintiff's counsel, Dr. Dempsey explained, "[p]lease note that I didn't copy every single session I had with [plaintiff] as I had so many with him from the various years he had sessions with me, I'd be sending an envelope about an inch and a half thick."  Id.

15

Dr. Dempsey's based his medical source statement on plaintiff's "neurological anxiety disorder[,]" "Borderline cognitive functioning[,]" and "mild delays in all aspects of academic skills[.]"  T. at 345.  He determined that plaintiff was moderately impaired in his ability to interact appropriately with the general public; markedly impaired in his ability to maintain attention and concentration, maintain regular attendance, understand and apply simple instructions, get along with co-workers, and respond appropriately to ordinary stressors; and extremely limited in his ability to perform activities within a schedule, be punctual, perform at a consistent pace, accept instructions, and respond appropriately to criticism from supervisors.  Id. at 344-45.  Dr. Dempsey also concluded that plaintiff would be off task for more than thirty-three percent of a workday and miss two days of work per month.  See id. at 345.  Dr. Dempsey stated that "the time period covered by the answers to the questions" was "06/11 2018 to 08/13 2018[.]"  Id. at 346.

As to Dr. Dempsey's treatment notes, the Court has some difficulty deciphering the handwritten notations and only recites the relevant portions that it can discern.  See T. at 355-63.  The notes focus heavily on what plaintiff was eating and whether he was increasing his weight, as Dr. Dempsey suggested, and on plaintiff's plans or goals for the future.  See id. at 355-62.  The first treatment note is from 2004, plaintiff's initial visit with Dr. Dempsey, wherein he stated that plaintiff was acting out and was not disciplined.  See id. at 363.  The next note is from "6/11/18" wherein Dr. Dempsey explained that plaintiff did not eat breakfast or lunch, he slept during the day, and he couldn't "think of fun in his life."  Id. at 362.  During subsequent visits, Dr. Dempsey continued to note that plaintiff was "lost," with "no direction in his life in anyway.  Way uncomfortable."  Id. at 361.  Plaintiff told Dr. Dempsey he "just do[esn't] want to be w/

16

people" and Dr. Dempsey indicated that plaintiff was "so lost[.]"  Id. at 360.  Plaintiff

began selling games online.  See id. at 359.  In the beginning of 2019, plaintiff was

"feel[ing] more relaxed[]" but had "no real future goals . . . talking is all on-line . . . seeing

people face to face makes him anxious."  Id. at 358.  Dr. Dempsey explained that

plaintiff does not have "real conversations w/ others outside of family" but had "virtual

chats" with his girlfriend.  Id. at 357.  Plaintiff was "[t]hinking [about] getting [his] driver's

license" but indicated that he does not like driving.  Id. at 355-56.  Plaintiff agreed to

look "over on-line reviews of how to get GED in NY."  Id. at 356.  Dr. Dempsey's most

recent treatment note from March 26, 2019, indicated that plaintiff "need[ed] to have

some goals" and that they discussed his getting a GED or a job but "it seems too much

for him[.]"  Id. at 355.  Dr. Dempsey discussed taking "small steps" with plaintiff and "he

seemed passingly ok w/ that."  Id.

An August 13, 2018, psychological evaluation submitted with Dr. Dempsey's

medical source statement, revealed that plaintiff's cognitive functioning "was Low

Average to Borderline range and academic skills [] were overall mildly delayed.  ALL

academic scores were lower than what was predicted by his cognitive scores."  T. at

350.  Dr. Dempsey indicated that "[a]t this point, [plaintiff] is struggling in a variety of

domains in his life, and is having significant issues with anxiety, depression, and

confusion over where to go now in his life. . . .  [I]t is strongly recommended that he

continue in active psychotherapy, and also that he be looked at for the possible use of

psychotropics for his mood disorders with anxiety and depression."  Id.  During plaintiff's

hearing on February 24, 2020, plaintiff stated that Dr. Dempsey "retired recently" and

that he was not "really sure" if he would see a new person for his anxiety and

depression because he had "known [Dr. Dempsey] for most of [his] life.  Finding someone else is hard."  Id. at 35-36.

The ALJ found Dr. Dempsey's medical source statement to be unpersuasive. See T. at 17.  The ALJ explained that "Dr. Dempsey provided no substantial comments on the assessment document itself to the support the limitations he assigned."  Id.  The ALJ also determined that the opinion was "inconsistent with the record as a whole, including the opinions of the State agency medical consultants, the opinion of Dr. Slowik, and the information noted . . . in the evaluation of [plaintiff's] symptoms, which shows that [plaintiff] has the ability to perform basic daily activities and has at least minimal social interaction skills."  Id.  Finally, the ALJ noted that Dr. Dempsey's "opinion applies only to a limited period of time in the past . . ., and [plaintiff] testified that he is no longer under Dr. Dempsey's care."  Id.

### D. Analysis

The ALJ erred in applying the consistency and supportability factors under 20 C.F.R. § 404.1520c(b)-(c).  The supportability factor looks to not only the "supporting explanations" provided by a medical source, but also the "objective medical evidence . . . presented[.]" 20 C.F.R. § 404.1520c(c)(1).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).  "[T]he Second Circuit has repeatedly found that a patient's complaints or reports of her history are 'an essential diagnostic tool.'" Guptill v. Astrue, No. 5:08-CV-0077 (NAM), 2010 WL 1948199, at *4 (N.D.N.Y. Apr. 28, 2010), report and recommendation adopted, 2010 WL 1948201 (N.D.N.Y. May

18

14, 2010) (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008)).[8]  Dr. Dempsey

submitted "two psychological evaluations . . . in addition to copies of [a]n abundance of

relevant treatment sessions . . . [and] a copy of the questionnaire[.]"  T. at 343.[9]  The

ALJ determined that Dr. Dempsey's opinion was unsupported because he did not

provide "substantial comments on the assessment document itself."  <u>Id.</u> at 17.  "[T]he

Second Circuit has recently clarified that an opinion by a treating provider should not be

discounted solely because it is provided on a check-box form."  <u>Kimberly W. v. Kijakazi</u>,

No. 6:20-CV-925 (DJS), 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022) (citing <u>Colgan</u>

<u>v. Kijakazi</u>, 22 F.4th 353, 360-61 (2d Cir. 2022)).  Rather, "the nature of an ALJ's inquiry

in disability factfinding turns on the substance of the medical opinion at issue—not its

form—and ultimately whether there is reasonable evidence in the record that supports

the conclusions drawn by the medical expert[.]"  <u>Colgan</u>, 22 F. 4th at 361.  The ALJ did

not explain whether the substance of Dr. Dempsey's opinion was supported by his

treatment notes or psychiatric evaluations.  <u>See</u> T. at 17.  This omission amounts to

legal error where the ALJ did not sufficiently "explain how [h]e considered the

supportability" of Dr. Dempsey's opinion with his objective medical evidence and the

---

[8] To the extent, the Commissioner argues that Dr. Dempsey's records, and plaintiff's reliance on them, do not constitute substantial evidence because the "notes are, in fact, merely [p]laintiff's subjective complaints[,]]" this argument is continuously, plainly rejected in the mental health context. Dkt. No. 18 at 8.  "[T]he fact that [the plaintiff's counselor's] opinion was based upon the [the] plaintiff's subjective reports relating to his symptoms does not, by itself, warrant the rejection of the opinion."  <u>Stasiak v. Berryhill</u>, No. 17-CV-00437, 2018 WL 5993732, at *3 (W.D.N.Y. Nov. 15, 2018); <u>see</u> also <u>Guptill</u>, 2010 WL 1948199, at *4 ("As an 'essential diagnostic tool,' [the physician] was entitled to also rely upon [the p]laintiff's subjective complaints [related to depression and anxiety] and doing so hardly undermines her opinions.").

[9] Dr. Dempsey's opinion appears twice in the record.  It was first submitted on January 13, 2020.  <u>See</u> T. at 332.  It was again submitted with his cover letter and accompanying notes and evaluations on February 22, 2020.  <u>See</u> <u>id.</u> at 342-43.  The ALJ cited both versions when determining that Dr. Dempsey's opinion was unpersuasive.  <u>See</u> <u>id.</u> at 17.

Court cannot otherwise glean the ALJ's rationale in finding the opinion unsupported.  20 C.F.R. § 404.1520c(b)(2).

The ALJ also erred in his review of, and reliance on, the state agency medical consultants' opinions.  "[A]n ALJ commits legal error in resting his [or her] disability determination on 'a one-time snapshot of a claimant's status' because that episode 'may not be indicative of [his or] her longitudinal mental health.'"  Colgan, 22 F.4th at 362 (quoting Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019).  The ALJ found the state agency consultants' and Dr. Slowik's opinions well-supported and consistent for essentially three reasons: (1) they were consistent with each other; (2) there was a narrative rationale written in each to provide support; and (3) they were "consistent with other evidence in the record, including the information . . . from Dr. Dempsey's records regarding the claimant's ability to interact with others."  T. at 17; 16.  The ALJ's justifications are not supported by substantial evidence because the ALJ cherry picked and improperly interpreted Dr. Dempsey's records, and the state agency consultants did not have review Dr. Dempsey's treatment records or medical source statement prior to making their determinations.

The ALJ explained that plaintiff's ability "to engage in activities [is] consistent with the ability to perform simple, unskilled work."  T. at 16.  The ALJ relied on the fact that plaintiff "complied with instructions" during one of Dr. Dempsey's psychiatric evaluations; he could operate a microwave, "use a video game console[,]" and help take care of the family dog; Dr. Dempsey encouraged plaintiff to get a driver's license and a GED; and plaintiff had contact with his girlfriend, other people online, and helped his cousin move.  Id.  The ALJ also recounted plaintiff's and his mother's testimony that

plaintiff does not have friends his own age, he does not speak to people he does not know, he is anxious in public, and he will sometimes refuse to leave his room.  See id. at 15.

As plaintiff identifies, there is evidence in the record supporting more restrictive limitations.  See Dkt. No. 13 at 13-15.  Plaintiff's mother testified that plaintiff "will not talk to strangers at all"; and Dr. Dempsey noted that during discussions about a G.E.D., "it seems too much for [plaintiff] . . . small steps and he seemed passingly ok w/ that[,]" he has "no real conversations w/ others outside of family[,]" or "real future goals[,]" and "seeing people face to face makes him anxious."  T. at 39, 355, 357, 358.  During Dr. Dempsey's evaluation, he stated that plaintiff "was very insecure in his skills in both cognitive and academic domains, and need gentle coaxing to hang in with all given."  Id. at 282.  Plaintiff explained that "all his friends are from online interactions.  He noted, 'I don't have any friends in person.'"  Id. at 284.  Further, Dr. Dempsey observed that as to attention and concentration, plaintiff was "[d]istracted often."  Id. at 288.  The ALJ discounted Dr. Dempsey's opinion, in part, because of "the opinion of Dr. Slowik, and the information noted above in the evaluation of [plaintiff's] symptoms, which shows that [plaintiff] has at least minimal social interaction skills."  Id. at 17.  However, during Dr. Slowik's evaluation she explained that plaintiff's "social skills were lacking[,]" his "[e]xpressive and receptive language skills were below-age expectations[,]" and he "was quite difficult to interview due to a lack of conversation skill."  Id. at 320.  As such, Dr. Slowik determined that plaintiff was moderately to markedly limited in his ability to use reason and judgment; interact with supervisors, coworkers, and the public; and regulate his emotions.  See id. at 322.

"An ALJ does not have to state on the record every reason justifying a decision."
Brault, 683 F.3d at 448.  However, "an administrative law judge may not 'cherry-pick'
medical opinions that support his or her opinion while ignoring opinions that do not."
Tim v. Colvin, No. 6:12-CV-1761 (GLS/ESH), 2014 WL 838080, at *7 (N.D.N.Y. Mar. 4,
2014).  Here, the ALJ cited only Dr. Dempsey's records indicating that plaintiff was
"encouraged" to get his G.E.D. and a driver's license, was in contact with his girlfriend,
communicated with others online, and helped his cousin move, but omitted the records
indicating that plaintiff could not speak to people face-to-face, had no real conversations
with people outside of his family, the idea of the G.E.D. seemed to be too much for him,
and that Dr. Slowik had trouble interviewing him because of his lack of social skills.  T.
at 16.  Although the ALJ acknowledged plaintiff's and his mother's testimony regarding
plaintiff's lack of social skills, the ALJ did not reconcile that testimony with the
corroborating objective findings shown in Dr. Slowik's examination or Dr. Dempsey's
treatment record.

Further, the ALJ made the unsubstantiated and contradicted conclusion that
because Dr. Dempsey encouraged plaintiff to get his G.E.D. and driver's license,
plaintiff "has the potential to move beyond the difficulties" he and his mother testified to.
Id.  There is nothing in the record to support the ALJ's conclusion, and Dr. Dempsey's
treatment notes explicitly stated the opposite—that plaintiff was not prepared to handle
such tasks, was only "passingly ok" taking small steps, and "still ha[d] a long way to go
to settle all these variables in his own mind and emotions."  Id. at 355; 350; see Renee
L. v. Comm'r. of Soc. Sec., No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *5
(N.D.N.Y. Mar. 8, 2022) (citation omitted) ("Although the ALJ's RFC conclusion need not

22

mirror any one medical source opinion, ALJs are not medical professionals, and, therefore, are 'not qualified to assess a claimant's RFC on the basis of bare medical findings.'"); Molina v. Saul, No. 18-CV-04990 (DF), 2019 WL 5287943, at *34 (S.D.N.Y. Sept. 28, 2019) ("[W]here the ALJ did not even accurately characterize the mental status examinations on which she purportedly relied, and then omitted from her decision any reference to many of the most troubling aspects of [the p]laintiff's mental health records, the Court cannot find that the ALJ exercised the appropriate level of care in reviewing the Record.").

As a result of the ALJ relying on only the portions of Dr. Dempsey's treatment notes supporting his decision, the ALJ's conclusions that the state agency medical consultants' and Dr. Slowik's opinions were consistent with those records was necessarily tainted. See T. at 16-17; see, e.g., Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *25 (S.D.N.Y. Sept. 24, 2021) ("[B]y cherry-picking from the medical record the particular evidence of [the p]laintiff's mental health history that aligned with the ALJ's view of the flaws in [the medical] opinion, and by mischaracterizing other evidence so as to discredit that opinion further, the ALJ failed to engage in a proper analysis or articulation of the 'supportability' and 'consistency' factors that should have been central to his assessment of that treating-source opinion."). "The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion - it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim." Darla W. v. Comm'r of Soc. Sec., 5:20-CV-1085 (TWD) 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) (emphasis added). Although the ALJ "elaborat[ed] which parts of the" record were

consistent with the opinions, the ALJ's lack of meaningful consideration for the entirety of Dr. Dempsey's records and his mischaracterization of the parts he did consider, does not allow the Court to confidently conclude that the ALJ met his duty under the consistency factor to examine all of the other medical evidence in the record.   William B. J. v. Comm'r of Soc. Sec., No. 6:20-CV-0989 (LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022); see also 20 C.F.R. § 404.1520c(c)(2).

As to Dr. Slowik's opinion, the ALJ stated that it was consistent with other evidence in the record, including the information in Dr. Dempsey's records regarding the plaintiff's ability to interact with others.  See T. at 16.  However, the ALJ did not acknowledge the consistency between Dr. Slowik's moderate to marked limitation findings in plaintiff's ability to "use reason and judgment to make work related decisions; interact adequately with supervisors, coworkers, and the public[,]" and Dr. Dempsey's moderate to marked limitations in plaintiff's ability to interact appropriately with the public, get along with coworkers, and respond appropriately to ordinary stressors in a work setting.  Id. at 321, 344-45.  The ALJ also did not explain whether Dr. Dempsey's treatment notes, indicating that plaintiff had severe trouble interacting with others face-to-face, were consistent with Dr. Slowik's examination findings that plaintiff had "below-age expectations" language skills, he would struggle with mutual exchanges, and he was difficult to interview as a result.  Id. at 321, 359.

"[I]n the case of mental health impairments, [] the Second Circuit has 'frequently cautioned' ALJs not to rely too heavily on consultative examiners, . . . where 'a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.'" Skartados v. Comm'r of Soc. Sec., No. 20-CV-3909 (PKC), 2022 WL 409701, at *9

24

(E.D.N.Y. Feb. 10, 2022) (quoting Estrella, 925 F.3d at 98); cf. Ingrid T.G. v. Comm'r. of Soc. Sec., No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *7 (S.D.N.Y. Mar. 8, 2022) (explaining that in the context of fibromyalgia and somatic symptom disorder where evidence of symptoms is "entirely subjective" and there is an "absence of underlying objective medical causes and signs[,]" "the ALJ did not evidence sufficient concern for the fact that the treating provider assessments are particularly probative where, as here, the claimant's symptoms (a) can be expected to wax and wane over time and (b) would likely be aggravated if she was exposed to the stress demands of competitive, remunerative work on a consistent basis.").  Here, Drs. Weitzen and Kamin did not examine plaintiff and reviewed an incomplete record, and Dr. Slowik examined plaintiff on one occasion; thus, they had "no picture of [p]laintiff's longitudinal mental health." Skartados, 2022 WL 409701, at *9 (citations omitted) (finding that the ALJ's "failure to acknowledge" that the plaintiff's treating sources had "a deeper knowledge" or the plaintiff's mental health, "while discounting the opinions of treating sources and relying 'heavily' on the opinion of a one-time consultative examiner who had no access to Plaintiff's relevant medical records, was error.").  The ALJ failed to consider Dr. Dempsey's exceptionally lengthy treatment relationship with plaintiff, seeing him from age four to nineteen.  See T. at 355, 363.  "Although the treating physician rule no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important 'support' for a medical opinion under the new standard."  Ingrid T.G., 2022 WL 683034, at *7.  This is because "no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with

those observations is a factor in determining the value of any [treating source's] opinion." Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021) (citations omitted).  "As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" Id. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)).

The ALJ found the consultant's opinions to be "supported by a narrative rationale, which cites supported mental status examination findings and other evidence from the record." T. at 16.  The consultant's rationale referenced plaintiff's subjective allegations, his IQ score, and Dr. Slowik's findings. See id. at 52-53, 75.  Dr. Weitzen's determination was completed on March 6, 2019, and Dr. Kamin's was completed on May 15, 2019. See id. at 52, 72.  Dr. Dempsey completed his opinion on January 8, 2020, and it was sent to the Office of Disability Adjudication and Review on January 13, 2020. See id. at 332.  Therefore, neither consultant reviewed Dr. Dempsey's treatment records or opinion when they made plaintiff's initial and reconsideration determinations.[10]  "[T]he assignment of significant weight to a non-examining consultant's opinion is error when the consultant reviewed an incomplete record that lacks notes or opinions by the plaintiff's treating psychiatrist." Stevens v. Comm'r of Soc. Sec., No. 3:15-CV-524 (ATB), 2016 WL 3199515, at *7 (N.D.N.Y. June 8, 2016) (remanding because "the ALJ failed to consider whether th[e consultative examiner's]

---

[10] As part of their determinations, the consultants reviewed Dr. Dempsey's 2018 psychological evaluation of plaintiff that was submitted on February 14, 2019, but explicitly stated that "[t]here [was] no indication that there is a medical opinion form any medical source."  T. at 51; 47, 281-88.

opinion may have differed if [he] had been able to review this evidence, which consisted of almost three years worth of additional psychiatric analysis of [the] plaintiff."). Dr. Dempsey assessed marked and extreme limitations and his records indicate a more severe lack of social skills than the consultants' considered or determined. See T. at 333-34, 355, 358. The ALJ did not engage in a discussion of whether Dr. Dempsey's findings might have impacted the consultants' determinations. See id. at 16-17; cf. Renee L., 2022 WL 685285, at *8 (citations and quotation marks omitted) (explaining that the ALJ was not "required to obtain an updated consultative examination where, as here, evidence of [the p]laintiff's subsequent hospital visits would not change the state medical experts' opinions. . . .  Moreover, [the p]laintiff neither demonstrated additional [] limitations that undermine the [medical consultant's] opinion, nor identified any relevant evidence post-dating [that] opinion that the ALJ failed to consider.").

To the extent the ALJ found the consulting and reviewing opinions consistent with each other, and inconsistent with Dr. Dempsey's opinion, that is likely because they considered the same evidence which did not include Dr. Dempsey's treatment notes or opinion. See Sanford v. Berryhill, No. 3:18-CV-01019 (SALM), 2019 WL 427322, at *7 (D. Conn. Feb. 4, 2019) ("[T]o the extent the opinions . . . are consistent, that is likely because not one of them considered any evidence after" a specific date.); Tammy T. v. Kijakazi, No. 5:21-CV-1, 2022 WL 71995, at *13, 15 (D. Vt. Jan. 7, 2022) ("[E]ven under the new regulations, the consistency of the state agency consultants' opinions with observations of the treating sources remains an important factor . . . . [and] neither the ALJ nor the state agency physicians meaningfully engaged with these treatment notes[.]").  Further, although the medical consultants relied almost exclusively on Dr.

Slowik's opinion, they assessed moderate limitations where Dr. Slowik found plaintiff was moderately to markedly limited.  See T. at 52, 74-75, 321-22.  The consultants did not explain why they found that plaintiff was moderately limited and not markedly limited.  See id. at 52-53, 75.  The consultants reiterated Dr. Slowik's moderate, and "mild[] to moderat[]e" findings but did not reiterate the moderate to marked limitations or Dr. Slowik's finding that plaintiff "was quite difficult to interview due to a lack of conversational skill."  Id. at 320; 52-53, 75; cf. Stacey v. Comm'r of Soc. Sec. Admin., 799 F. App'x 7, 10 (2d Cir. 2020) (summary order) ("[The] unsupported opinion[s], offered by two psychologists who never so much as examined [the plaintiff], is little more than *ipse dixit*.  It certainly is not sufficient to contradict the assessment of a psychologist who saw [the plaintiff] regularly for years and formed an opinion based on firsthand observation and conversations.").

The ALJ attempted to explain his resolution of this conflicting evidence by stating that "[i]t should be noted that the areas of mental functioning in which Dr. Slowik indicated that [plaintiff] might be markedly limited are accommodated by the residual function capacity assessed in the decision, considering that it limits [him to] simple routine work that requires minimal interaction with others."  T. at 17.  However, this does not cure the ALJ's reliance on only parts of Dr. Dempsey's records, his mischaracterization of them, and in turn his reliance on the state agency consultants' opinions that did not consider Dr. Dempsey's treatment record or opinion.  It is possible that had the consultants' reviewed Dr. Dempsey's notes and opinion, they would have concluded that plaintiff's limitations fell on the "marked" side of Dr. Slowik's conclusions. See id. at 321-22, 344-45; but see Robin P. v. Comm'r of Soc. Sec., No. 1:20-CV-863

(TJM), 2022 WL 593612, at *8 (N.D.N.Y. Feb. 28, 2022) (affirming where although "medical reports exist subsequent to the opinions [the state agency examiners] rendered, the ALJ incorporated that evidence in determining the weight to assign those opinions. . . .  The [p]aintiff does not explain how the later-acquired evidence undermines the conclusions of these examiners or points to a substantial change in [the p]laintiff's condition.").

The Court recognizes that "administrative legal error is harmless when the same result would have been reached had the error not occurred."  Snyder v. Colvin, No. 5:13-CV-585 (GLS/ESH), 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014).  The ALJ stated that Dr. Dempsey's opinion "applie[d] only to a limited period of time in the past . . ., and [plaintiff] testified that he is no longer under Dr. Dempsey's care."  T. at 17.  On the issue of duration, "a claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting 42 U.S.C. § 423(d)(1)(A)).  Dr. Dempsey's opinion applied from "06/11 2018 to 08/13 2018[.]"  T. at 346.  This correlates to the first treatment note in the record after 2004 and the most recent psychological evaluation, both of which Dr. Dempsey submitted along with his opinion.[11]  See id. at 347, 362. Importantly, Dr. Dempsey treated plaintiff for nearly his entire life, and it was only because Dr. Dempsey retired that plaintiff was no longer seeing him.  See id. at 36.  In

---

[11] To the extent plaintiff contends that the ALJ had a duty to contact Dr. Dempsey to clarify his handwriting and the dates written on the opinion, the Court is not persuaded by plaintiff's conclusory argument that this duty is triggered because the Commissioner admitted that Dr. Dempsey's handwriting is "difficult to read[.]"  Dkt. No. 21-1 at 3; Dkt. No. 18 at 16.

February 2019, Dr. Slowik determined that the expected duration of plaintiff's impairments was "[m]ore than two years[]" and that his impairments "may significantly interfere with [his] ability to function on a daily basis." Id. at 322. Despite Dr. Dempsey's opinion applying to a two-month period, the Court cannot confidently conclude that on remand, considering the entire record and appropriately applying the regulatory factors, the ALJ will come to the same conclusion. See Kelly S. v. Kijakazi, No. 3:20-CV-1232 (DJS), 2022 WL 279555, at *5 (N.D.N.Y. Jan. 31, 2022) ("The Court is not persuaded that the harmless error rationale applies" despite "the time period that the assessment covered is less than the necessary durational period" because the plaintiff's conditions "had existed for several years[,]" the ALJ had "already concluded that" they were severe, and there was no "indication in the  record" that the conditions had improved.).

As the ALJ erred under 20 C.F.R. § 404.1520c(b)-(c), remand is required and the Court need not address plaintiff's remaining arguments.[12] See Devra B. B. v. Comm'r of Soc. Sec., No. 6:20-CV-00643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach [the p]laintiff's remaining arguments."). On remand, the ALJ should "more fully explain his reasons [under the relevant regulations]. . . .  This is not to say that on remand, the ALJ could not ultimately weigh the evidence in a similar fashion." Kimberly W., 2022 WL 561665, at *5.

---

[12] Although it is not raised by the parties, the Court notes that the ALJ found Dr. Slowik's, Dr. Kamin's and Dr. Weitzen's opinions equally well-supported and consistent with the record. See T. at 16-17.  The regulations require that in that instance, the ALJ discuss the remaining 20 C.F.R. § 404.1520c(c) factors including the examiner's relationship with the claimant, extent of treatment relationship, examining relationship, specialization, and "other factors."  20 C.F.R. § 404.1520c(c)(3)-(5).  The Commissioner should be mindful on remand to assiduously apply all of the requisite factors.

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 13, is **GRANTED**; and it is further

**ORDERED**, that defendant's Cross-Motion for Judgment on the Pleadings, Dkt. No. 18, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED.**

Dated:  March 17, 2022
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

31